Will the clerk please call the last case of the morning? 116-1915, Joseph Agresto, Association Act. Counsel, you may proceed. Thank you, Your Honor. May it please the Court? Counsel, my name is Jack Cannon. I represent the petitioner in this matter, Joseph Agresto. The law of the case, doctor, protects the parties. It satisfies the patients. Counsel, before you get into that and get into your issues, I've got some problems with your brief. Do you want to look at the standard review section in your brief, page 18? The standard review last night is probably not articulated as well as it should be. It's not only not articulated, it doesn't comply with Supreme Court Rule 341H3. You merely give us the general statement of what the three standard reviews are that are possible, although you fail to relate those standard reviews to any issues raised in your brief. That page definitely does not. Yeah, leaving us to wonder what they are. And I apologize for that. I think on page 19 you clearly address that there are things that are contrary to the law of the case. The law of the case is a little bit different than the standard review. Second of all, you raise how many issues in this appeal? Five, I believe. Five? Three of them you fail to cite a single case in support of the issues. That's issues 3, 4, and 6. One might make the argument that issue 3 really isn't an issue, it's part of issue 2. But the fact of the matter, for 4 and 6, you don't cite a single case. If you don't cite a case, it's forfeiture. There is layover from the argument, and the argument's default. There's no layover on penalties or attorney's fees, period. There's no cases cited. The issue is forfeited. In the termination of TTD, there's evidence that he reached MMI on the date that they suggested. So there's no layover on that. You know, we harp about these briefs constantly, and nobody listens to us. Maybe what we ought to do is just start striking noncompliant briefs and making you do it over again. You leave us the job of doing the real research for you. Why don't you go ahead on your first issue as to whether it's barred by the law of the case. The law of the case protects the priority of self-examination. It ensures uniformity of decisions, maintains consistency during the course of a single case. So what's inconsistent about the commission's finding that he didn't suffer either left-sided nerve compression or spondylolisthesis as a result of his injury? It was never decided in the first decision. I agree with you, however. So that's not law of the case? Because you can't just look at it with that. You have to look at what Goldberg's opinion is and the basis for him deciding that. Hold on, hold on. They rejected Goldberg's opinion that the man did not suffer herniations as a result of his first injury. They specifically rejected it based on the law of the case document. Goldberg said two things. He didn't suffer any herniations. He didn't have herniations. And number two, he did not suffer either left-sided nerve compression or spondylolisthesis. Now, they rejected the first half but accepted the second half. You tell us that because Goldberg testified that he had radiculopathy, it's, quote, common knowledge that radiculopathy is caused by nerve compression, close quote. Where does that common knowledge come from? Goldberg's own testimony is that he changed his opinion once he determined there were no discs there. Up until that point, Dr. Goldberg is saying this man needs to move every hour because he has radiculopathy going into his legs. He sees this guy multiple, multiple times. It's only when he decides that now I've looked at the films and I don't see any discs here, then he changes his opinion. I would also suggest to the Court that radiculopathy is commonly known to cause nerve compression. Can I ask you a question? Sure. Do we get judicial notice of that? No. Where do we find it? You can take my line of notice of it. How can I take it? It's all over. Counsel, cut it out. Whether radiculopathy does or does not cause my nerve compression is a medical opinion. And it takes a medical expert to do it. We are not medical experts. Dr. Sheff is. Well, wait a minute. The Commission rejected it. They said the man did not suffer from it. And they accepted Goldberg's opinion. Now, the only way to defeat it is to defeat Goldberg's opinion because it's a manifest weight issue. Go ahead. Goldberg says. Goldberg does not come to that opinion until he decides there's no discs there. And he can't have that opinion because there are discs there and it's the law of the case. That's when Goldberg comes to this conclusion. At no point before that does Goldberg ever say that that doesn't happen. Then, across examination, Goldberg says. While he initially believed the petitioner had disc herniations, he did not make any mention for the petitioner of symptom magnification. And if he found inconsistency with the petitioner, he would have known. He said the petitioner was credible. He was telling the truth. He said the petitioner is symptomatic. He's got radicular complaints coming from his lumbar spine. And if he continues to have radicular complaints, he should continue to be able to move around every hour. That's what he says across examination after he says that the discs have mysteriously disappeared. I might also add that seven to eight doctors, including the radiologists, say that these discs exist. But Goldberg says that they don't exist. What do the radiologists of the MRI scan of June 16, 2010 say as to whether the claimant suffered from any left-sided nerve compression? He said he didn't. The June 16th note from Dr. Sheth reports radicular symptoms. It doesn't say what side. Yeah, it does not report any left-sided nerve compression. However, for five years, everybody agrees that this guy's got herniated discs. For five years, everybody believes that he's got radicular symptoms. For five years, everybody believes that he's got… And what are we supposed to do with his own treating physician, Stamoulos, who thinks this guy is gaming him? He put in his records, I think the claimant is using me to be his doctor of record so that he can go through these actions of proving his disability and stopping his return to work or not being able to return to work, close quote. That's Stamoulos, who is saying he's 100 percent disabled. And then in his note of December 9, 2014, he says, quote, need some doctor to write the status and agree with his, I believe, exaggerated work disability status. At this point, the petitioner has been off work without benefits for two years. Stamoulos is an orthopedic surgeon. The petitioner is continuing to go back to Stamoulos for medications. Stamoulos is still on his hands and saying, I'm not going to be offering this guy anymore because I'm a surgeon. I think he doesn't want another lumbar surgeon. So that's the basis of where that's going. Well, that may be true. But Stamoulos, you can't characterize that as being helpful to the claimant, is it? It is, in most respects. Some of his testimony is a little out there, particularly where he editorializes. He says, the guy fell off a chair. I had to sat-hire him over his compensation. Yeah, but if he... I don't know what that is supposed to mean. If he expresses reservations about his own patient's credibility in symptom magnification, that's not a problem? Okay. If we're going to take that as... Well, he's saying about symptom... Nobody else says symptom magnification. Goldberg says no symptom magnification. But this is his own doctor. It's his own doctor. But he also says the guy is no way he's going to be able to work because if he can get a copy, he can lie down. Now, Stamoulos says some goofy things in his testimony, no question. But he lines up with what Sheff says, and he lines up with what everybody else says. In what particular? In what particular does he line up? He lines up. He says he has herniated discs. He's permanently totally disabled, which is what Sheff also says. He says that if he doesn't get the disc repaired, that there's no job that he can do. What does Sheff say? Sheff says this man is permanently and totally disabled. Wait a minute. Where did he say he was totally and permanently disabled? He said, and I'm quoting, he found him to be at MMI. This is on August the 5th, 2011. No work until further notice. He says in the note before that the man is disabled. Sheff absolutely says that. But that doesn't count because that's the early in the case exception. But I'm not able to find a case on that either. So Stamoulos, the only outlier here medically is Goldberg. And I understand. You know, would you give me the exact date of this note that you claim where Sheff said that he was totally and permanently disabled? Because my notes say that he never said. He absolutely said it. It only says, you made an offer of proof, that if the claimant were allowed to testify, he would testify that Sheff was of the opinion that he was permanently and totally disabled. Here's the quote. Dr. Sheff says that the rest of his permanent will be offered permanently due to his low back pain. And when was that from Dr. Sheff's notes or what date? No, no, I understand what your client says. And the date of the notes where you say that's contained, please. I believe it's in June or July, Judge. I'm looking at August 5th, 2011, and Sheff says he's going to be no work until further notice. And the note before that says, offered permanently due to his low back. But you don't have a specific date right now you can call attention to? I know it's there, Judge. I've seen it. I've been doing this for long enough. When I see the city of Chicago's examining doctor, who in the law of the case is determined as an examining doctor, and when I see it says, offered permanently due to low back, I'm not going to mess that up. That's in there. That's in there. But that's the only other case exception, which is ignored. And I understand Stengel's system will do things. But Stengel's lines up with all these other doctors. As I said before, Goldberg is the only outlier here. And when Goldberg offers his opinion, there's a flawed basis. It's a flawed basis because he says the herniations aren't there anymore, and the law of the case, as well as all the other doctors and the radiologists report it. Tell us that it is. And as to 803b-4, under the new rules, the evidentiary rules, that statement should have been allowed in by the petitioner. I don't see anything to refute it in the record. Is it relevant when the arbitrator said even if Scheff had been permitted to testify, their decision would not have been different? I think it is relevant in the context that you consider Scheff to be their doctor, which the law of the case says it is. Sure, I think it's relevant. When you say law of the case, there is nothing in the first decision that says the guy's got spondylosis or the other half of Goldberg's opinion. It doesn't exist in the first case, period. Two herniations, that's the only thing you had from the first case. And he says it's law of the case. We also have radiculopathy. Well, we don't know what radiculopathy means because we don't have any expert testimony relating it to the other half of the Goldberg opinion. I mean, you know, you're playing fast and loose with this. No, I don't think I'm playing fast and loose. I think the respondents are playing fast and loose with doctor shopping. Their own doctor says this man is permanently ill due to low back pain, and after five years they get tired of paying him, so then they take him to Goldberg. Goldberg has the same opinion all along, and then, lo and behold, decides after the fourth or fifth time seeing this, I don't see any discs there. Did they ever tell Dr. Goldberg, hey, look, the law of the case says this guy has two herniated discs? No. So who's playing fast and loose with the record here? Not me and not the petitioner. The causation opinion regarding his current condition should be reversed. The petitioner had been on parole for five years, and until Goldberg's position made the disc disappear, the respondent was paying him and had accepted the claim. We then hired a vocational expert who interviewed Mr. Abrezzo and said that he didn't feel that there was a stable job market for him, and the respondent refuted that with a report that came up five days before the hearing. And also refuted it because the tests that were submitted to your client had no basis to determine whether he was giving it his best ability and also found even your own client, the results of those tests were seriously questionable for a person who was capable of getting a GED. Your own vocational expert said, I find it surprising. And their vocational expert said, I find it surprising, too. It was a serious question as to whether this man was putting forth his best efforts. The GED question came up when this fellow said because he has a GED, he should have done better. And when I cross-examined him. What did Boyd say? And Boyd said, that is a question to be examined, but the man had his GED in the 70s. This test was done in 2013 and 2014. So it's 34 years later where he's been working as a mechanic for that period of time. She attacked it because the tests that were submitted to him or that he was given didn't have any method in them to determine whether he was giving his best efforts. And Boyd, while he said that couldn't be called it a question, Boyd felt the man was giving his best effort and considered him to be a non-stable job for him. Moreover, at no point did the respondent ever offer this man vocational services whatsoever. They offered him a job that they knew that he couldn't get to based on all of his restrictions as they existed up until the point Dr. Boberg made the disk disappear. Now, if we can't rely on what the law of the case is, then what are we doing here? I mean, in all seriousness, what are we doing? If we can't rely on what's already been determined in the case, and I understand what you're saying. The point is an arbitrator says Goldberg. A unanimous commission says Goldberg. And you say law of the case. Now, the commission ought to know what it is they said in their first decision and what it is they held. They ought to be right. They ought to know. And the unanimous decision said it's not law of the case. Goldberg has an opinion, and we buy Goldberg. Okay. And here's what else the commission said. The commission said, consider all of the evidence the arbitrator finds that the undisputed work accident of June 9, 2010, first of all, it wasn't undisputed. We have to prove it all. Second of all, did not ultimately decrease petitioners' already reduced work capacity. That's not true even based on Goldberg. The man had a 15-pound restriction before this, and Goldberg reduced it by a third to 10 pounds. So that's incorrect. So I don't, there's a lot here. So I'm not going to say Dale and Allen are doing a good job, and I'm just saying in this instance they missed some things. And when they say that, that's clear evidence that they missed something. This man's capacities were reduced by a third, even by Goldberg. And in cross-examination, when I cross-examined Goldberg, Goldberg said, yeah, he is truthful. Yeah, he does have radiculopathy. I agree he should be able to move around every hour. And up until that point, that was acceptable to the respondent. And then all of a sudden they sent him out, and Goldberg, you know, we've been over that before. We've been over that before. Your time is up for now. You have five minutes in reply. Thank you. Counsel, you may respond. Good morning, Your Honors. Counsel, may it please the Court. My name is Joseph Zwick. I represent the appellee in this case, the city of Chicago. The commission's responsibility in this case, of course, is to weigh the evidence and the credibility of all the witnesses. When you look at the record and you look at the decision, it's a painstakingly thorough examination of the record. The commission very thoroughly evaluated each piece of evidence and every witness that was present. Counsel, the gist of his argument is that the law, the case doctrine, prohibited them from accepting Goldberg's opinion as to the second half of his opinion, the nerve compression of the spondyloidosis. Yeah, correct. And with regard to that argument, I mean, first of all, Dr. Goldberg had not rendered an opinion in the initial case, in the initial 19B hearing. So Dr. Goldberg's interpretation of the films was that he... No question. Dr. Goldberg did not contradict himself. Correct. That's true because he didn't testify in the first half. But the fact of the matter is the court found, the commission found the law and the case doctrine prevented the city from relitigating the question of whether the man had two herniated discs. He contends that that is the law of the case as to the nerve compression and the spondyloidosis. Yeah, and counsel also stated that the commission is trying to create an early in the case exception with regard to the law and the case. And what the commission is saying here is that, and certainly our position is that the law of the case applies to that first decision. We do not want this court or any court or anybody to readdress the issues of the accident and those issues with regard to benefits that were owed at the time of the initial accident. What the commission did at that time was hold the property. They evaluated the evidence presented, which was Mr. Claimant's testimony that he suffered an accident, that he reported an increase in pain, that he went and saw a doctor to get more. And then he had an MRI, and the MRI reportedly showed these herniated discs. Based on those factors that were presented, the commission evaluated the circumstances to get credibility evidence, and they determined, therefore, that he suffered an accident and his condition at that time was related to the accident. And what was his condition at that time? Well, his condition was low back pain. His condition was two herniated discs. Yeah, I mean, it's... You can't get away from that. In fact, the commission even admitted it. I don't know how you can answer on that. Well, because the issue of whether you call it a herniated disc isn't what is particularly relevant in terms of the subsequent issues. It's not a matter of whether they disappeared. I mean, a herniated disc is a term that is a term of art for the medical providers. Dr. Goldberg's opinion, in terms of his stating that he doesn't see herniated discs, is actually consistent with what Dr. Gilmour said. Dr. Gilmour looked at the films. He called them herniated discs, but he also noted that there was no impingement, no encroachment upon the nerves. So their interpretations are actually similar. It's just a matter of one doctor happens to call it herniated discs and another doctor says it's not herniated. That's a term of art. It doesn't... It's not necessarily relevant for the fact that the circumstances changed at the time of the final hearing in this case. When the case went back to hearing at that point, the fact of the matter was that he went back, or that he had been through treatment with Dr. Stamos, that Dr. Stamos provided his opinions. And I'm going to back up just a little bit here and just remind everyone that this individual's job prior to this accident was a severely limited position because he had an injury in 2005 before this accident. In his own testimony in terms of what his limitations were prior to this accident, he said that he can sit for a half an hour. He has to get up and move and walk around and stretch. No bending, lifting, twisting, or doing anything that would jog him back. That's his description of his limitations prior to the accident. That was the job he was performing at the time of this accident. He was performing a job as a garage attendant within those parameters. He agrees that this job is still available to him, that this job is made available to him. It's just now he's saying that he's no longer able to do the job. And he's relying upon Dr. Stamos primarily in terms of his statement why he can't do his job. Your Honor, as I've already pointed out, the other statements that Dr. Stamos made in terms of his opinions regarding the level of disability for the claimant here. So to answer the question in terms of the law of the case, the law of the case does not preclude the commission from assessing Dr. Robert's overall credibility and the overall circumstances of the case in rendering an opinion that he's able to perform this job. The other issue is if you talk about the distinction between whether or not there's radiculopathy, hurting the disc, et cetera, Dr. Goldberg states that there are, in terms of what counsel was talking about on cross-examination, those limitations are in fact the same limitations that he was claiming when he was working with him prior to this accident. So Mr. McGrath has a bad back. He's going to probably always have a bad back. But the fact of the matter is he had a bad back severely before this accident. So he's equally capable of returning to that level of employment currently as he was prior to the accident. Thank you. Thank you, counsel. Counsel, you may reply. You don't have to bother to address the question of whether it's law of the case that the guy had two herniated discs. I'm reading from the first decision. Petitioner returned to Mercy Works, had an MRI, showed a right central disc herniation at L4-5 and disc herniation at L3-4. Go ahead. So this petitioner had severe restrictions before this, and then he has two herniated discs superimposed over severe restrictions that were non-excessive standing, walking, climbing, lifting, bending, pulling, or pushing. Even Goldberg then comes along and says, this guy's got only a 15-pound lifting restriction. I'm going to reduce it to 10, even though I don't see discs there. He reduces it to 10. He also says that I believe the guy, I believe he's in pain, and I believe that he has radiculitis, and if he is having radiculitis, he should be able to get up and walk around and move within every hour. That's reasonable, and that's what Goldberg says on cross-examination. I still don't know why Dr. Sheff's opinion is not valid. Dr. Sheff said this man could run the Olympics and stand on his head and respond to the O.P.R. saying, look what Dr. Sheff said. But they just want to run away from Dr. Sheff because Dr. Sheff buries him, and he's their doctor. He's their doctor. They sent him there, and the case, the 19B called him their doctor, and that's what Dr. Sheff said. If they didn't like him, they couldn't call Dr. Sheff to trial. They went and got a different, a new opinion. And even then, opinions weren't backing them up until right at the end where Goldberg backed away and then said, you know what, I'm going to lift that restriction about him moving every hour. But then on cross, Goldberg then gave it up again. Looking at the totality of circumstances here, you have a gentleman on a disputed claim that we proved up once already, and they accepted, and they paid him. They then went out and got a new opinion so they could cut the guy off and put him in the situation he was in. I'm going to ask the panel to do one of two things. Either one, based on what I've heard prior arguments here, remand him back to the arbitrator for a decision consistent with what the law of the case is on the herniated disc. Or two, substantiate that the man is an unlawful adult. There's certainly enough there given his restrictions, given his shallow work history, given the fact that his age. I think there's two choices there. I think if we stop following the law of the case, we're all in trouble. We're all wasting our time. I've got a couple of questions for you on the question of whether he reached MMI and was capable of going back to work. Stan Law said he was 100% disabled and he couldn't work. Goldberg said he could. What other doctors? What about Dr. Espinoza? What did he have to say? Dr. Espinoza did address the man's neck, and I'm glad you brought that up because that's in parts of the decision. Agresto has never claimed that his neck was related to work, and he gets chastised in the body of the decision for some inconsistencies regarding the neck. Agresto never claimed the neck was related, and nobody's ever said it was related, and Espinoza addressed the back. The restrictions that I see that are coming from Stan Laws and are coming from Sheth, and Sheth specifically says it, are due to low back pain. We didn't get into the neck situation, and nobody has commented that the neck was the straw that broke the camel's back here. Okay. I'm sorry. I thought there was a second question. No, no. I just wanted to know if there was anyone else that commented on his ability to work. No, no. What did Yipor say? Did Yipor comment on his ability to work? Yipor, no. Yipor is the one who did the first surgery. They left him with sedentary restrictions, and Yipor says, hey, I'd like to cut you again. He was Agresto to say no, thank you, but I don't think anyone in this room would blame him for that. He has the surgery with Yipor. He has the sedentary restrictions with Yipor, and he gets a super-inconsistent. Thank you for your time. Thank you, counsel, both, for your arguments in this matter. This morning it will be taken under advisement. Written disposition shall issue. The court will stand in recess until 930 a.m. tomorrow morning. Thank you.